UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| CRAIG L. WILSON;<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL SERVICES DIVISION; et al.;<br>Defendants. | Case No.: 14cv2444-JAH (RBB)<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 40] AND DENYING PLAINTIFF'S MOTION TO STRIKE AND DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 47]** |
| --- | --- |

Plaintiff Craig L. Wilson, a former inmate at the George Bailey Detention Facility proceeding pro se and in forma pauperis, filed a Complaint on October 14, 2014, pursuant to 42 U.S.C. § 1983 against Defendants San Diego County Sheriff's Department; Alfred Joshua, M.D., chief medical officer at the San Diego County

Sheriff's Department; Sheriff William D. Gore; and San Diego County Sheriff's Medical Services Division [ECF No. 1]. Wilson asserts he was denied medical care in violation of the Eighth Amendment when jail officials stopped his prescribed pain medication for nonmedical reasons and gave him an alternative course of treatment for his back pain. (Compl. 2-3, ECF No. 1.)[1]

On November 28, 2016, Defendants William D. Gore and Alfred Joshua, M.D. filed a Motion for Summary Judgment [ECF No. 40]. The Court provided a briefing schedule and notice to Plaintiff under Rand v. Rowland and Klingele v. Eikenberry regarding Defendants' Motion for Summary Judgment [ECF No. 41]. Neither an opposition to nor a reply in support of the Motion for Summary Judgment were timely filed. On January 13, 2017, Gore and Joshua filed a "Notice of Lack of Opposition to Defendants' Motion for Summary Judgment" [ECF No. 43]. Wilson submitted a "Notice of Motion to Strike and or Deny Defendants['] Motion for Summary [Judgment] – for Failure to Provide Actual Facts Pursuant to Local Rule" (the "Opposition"), which was filed nunc pro tunc to January 23, 2017 [ECF No. 47]. On February 13, 2017, Gore and Joshua filed "Defendants' Reply to Plaintiff's Motion to Strike and Opposition to Defendants' Motion for Summary Judgment" (the "Reply") [ECF No. 50].

The Court has reviewed the Complaint, the Motion for Summary Judgment, the Opposition, and the Reply. For the reasons discussed below, the Motion for Summary Judgment [ECF No. 40] should be **GRANTED in part and DENIED in part**. Plaintiff's Motion to Strike and Deny Defendants' Motion for Summary Judgment [ECF No. 47] should be **DENIED**.

---

[1] The Court will cite to documents as paginated on the electronic case filing system.

# I. FACTUAL BACKGROUND

Plaintiff alleges that while he was incarcerated at the San Diego County Vista Detention Facility in 2003, he fell off the top bunk of his cell and suffered neck and back injuries. (Compl. 3, 5, ECF No. 1.) Wilson was subsequently diagnosed with "chronic sciatica, herniated ruptured and dessicated [sic] discs (L1-L5)-(T1-T2)." (Id. at 3.) He claims that as a result of his injury, he was prescribed a wheelchair, 2400 mg of Neurontin, and 150 mg of Ultram. (Id.) Plaintiff further contends that the doctor informed him that his "condition would be progressively degenerating and debilate [sic] to the point where [his] mobility and range of motion would eventually subject [him] to a wheelchair." (Id.) Wilson claims that medical staff continued administering Neurontin and Ultram to him "throughout the years"[1] to treat his "severe, chronic lower back pain." (Id. at 5, 16.) He alleges that in 2012, he had a "verbal confrontation" with a nurse who then discontinued his medications pursuant to the "Zero Tolerance Protection Policy." (Id. at 5.)

Wilson asserts that when he was reincarcerated in 2013, he was denied the medical regimen previously prescribed by his physician. (Id. at 3.) Plaintiff states that Defendants were aware of his prescription because it was reflected in the medical records kept by the San Diego County Sheriff's Department's Medical Services Division. (Id.) Wilson alleges that he was never seen by another physician before his prescribed medications were discontinued. (Id. at 5.) He claims that despite multiple medical requests, doctor visits, and grievances, jail officials denied his request for Neurontin for nonmedical reasons due to a zero tolerance policy. (Id.) Wilson believes the policy was

---

[1] Plaintiff does not provide any information as to when his previous incarceration ended.

3

implemented to eliminate the sale and abuse of drugs in jail resulting from faking the consumption of prescribed medication and "cheeking, hoarding, and selling" the drugs. (Id. at 4.)

Plaintiff alleges that Defendants substituted his treatment, forcing him to take medications he is allergic to. (Id. at 3.) Attached to the Complaint is a letter from Dr. Alfred Joshua, chief medical officer at the San Diego County Sheriff's Department, dated August 18, 2014, and addressed to Wilson. (Id. at 25.)

> Dear Mr. Wilson:
>
> A review of your medical record was conducted following the receipt of the complaint forms dated August 12, 2014. Upon review of your record, documentation by medical and sworn staff is noted on August 13, 2013 describing the violation of the zero tolerance policy involving Neurontin.
>
> Further review of your record reflects the jail clinic physician's discussion of the zero tolerance policy on various occasions with you and your acknowledgment and understanding of the aforementioned policy.
>
> Based on the above information and consideration for patient safety, alternative treatment with non-steroidal anti-inflammatory medication specifically Naprosyn was recommended. However, per your request Naprosyn was replaced with Motrin on July 21, 2014. Motrin has been discontinued based on your reported allergy to it.

(Id.)

Plaintiff indicates that he is allergic to Motrin; it causes hives and irritates his stomach condition, GERD. (Id. at 3.) Wilson contends that treatment with Motrin is medically unacceptable and that his medical care was "insufficient and improper" to

4

manage his pain.  (Id. at 3-4.)  In a grievance form dated August 12, 2014, and attached to his Complaint, Plaintiff states that for the preceding six months he had only received medications to which he is allergic.  (Id. at 15.)  Wilson believes that the officials' actions are contributing to an "accelerated deterioration of [his] already serious medical conditions."  (Id. at 3.)

Plaintiff seeks compensatory and punitive damages as well as an order directing Defendants to administer his previous medications, Neurontin and Ultram.  (Id. at 7.) Additionally, he asks for physical therapy, ward housing, and a walking cane for his mobility.  (Id.)

## II.  PROCEDURAL BACKGROUND

All four Defendants moved to dismiss Wilson's Complaint on December 2, 2014 [ECF No. 5].  The Court issued a Report and Recommendation granting in part and denying in part their motion to dismiss [ECF No. 15], which United States District Court Judge John A. Houston adopted on September 4, 2015 [ECF No. 18].  In his order, Judge Houston dismissed the claims against Defendants Medical Services Division and San Diego County Sheriff's Department.  (Order Adopting R. & R. Granting Part & Den. Part Defs.' Mot. Dismiss 4, ECF No. 18.)  In that order, he found that "Defendants Medical Services Division and San Diego County Sheriff's Department are not subject to suit under Section 1983."  (Id. at 2.)  Defendants Gore and Joshua answered on September 23, 2015 [ECF No. 21].

## III.  LEGAL STANDARDS

### A.    Standards Applicable to Pro Se Litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-

Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The Ninth Circuit has extended this maxim to include pro se filings, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), and it is not limited to complaints or pleadings. The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (citation omitted). This rule of liberal construction will be applied to Plaintiff's Complaint and Opposition.

**B.    Standards for Summary Judgment Motions**

Federal Rule of Civil Procedure 56(a) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Like the standard for a directed verdict, judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citing Brady v. S. Ry. Co., 320 U.S. 476, 479-80 (1943)). "If reasonable minds could differ," judgment should not be entered in favor of the moving party. Id. at 250-51; see Blankenhorn v. Orange, 485 F.3d 463, 470 (9th Cir. 2007).

The parties bear the same substantive burden of proof that would apply at a trial on the merits, including the plaintiff's burden to establish any element essential to his case. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Anderson, 477 U.S. at 252; see Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The absence of a genuine

14cv2444-JAH (RBB)

issue of material fact on a single element of a claim is sufficient to warrant summary judgment on that claim. Celotex Corp., 477 U.S. at 322-23.

The moving party bears the initial burden of identifying the pleadings and evidence it "believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The nonmoving party then has the burden of establishing, beyond the pleadings, that there is a genuine issue for trial. Id. at 324. To successfully rebut a defendant's properly supported motion for summary judgment, the "plaintiff[] must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[']s[] favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323; Anderson, 477 U.S. at 249). Material issues are those that "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether any genuine issue of material fact remains for trial, courts must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). While the district court is not required to search the entire record for an issue of fact, the court may nevertheless exercise its discretion to consider materials in the record that are not

7

specifically referenced.  <u>Carmen v. S.F. Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

When the nonmoving party is proceeding pro se, the court has a duty to consider "all of [the nonmovant's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the nonmovant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004) (citations omitted).

**C.    <u>Deliberate Indifference to Serious Medical Needs</u>**

Deliberate indifference to medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976).  Deliberate indifference to serious medical needs consists of two requirements, one objective and the other subjective.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (quoting <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir. 1995)).  The plaintiff must first establish a "serious medical need" by showing that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1991)).  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060).

With regard to the objective requirement, "serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain.'" <u>Lopez</u>, 203 F.3d at 1131 (alteration in original) (quoting <u>McGuckin</u>, 974 F.2d at 1059-60).

Under the subjective element, prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay or intentionally interfere with medical treatment." <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

Inadequate treatment due to medical malpractice, negligence, or even gross negligence, does not rise to the level of a constitutional violation. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991) (quoting <u>Estelle</u>, 429 U.S. at 105-06); <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). A defendant's acts or omissions will not amount to a constitutional violation unless there is reckless disregard of a risk of serious harm to the prisoner. <u>Farmer</u>, 511 U.S. at 836. The inmate must allege that the defendant purposefully ignored or failed to respond to his pain or medical needs; an inadvertent failure to provide adequate care does not constitute a violation. <u>Estelle</u>, 429 U.S. at 105-06. The official must have "know[n] that [the] inmate[ ] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847.

## IV. DISCUSSION

Judge Houston previously noted that "Plaintiff has not named the County of San Diego as a Defendant." (Order Adopting R. & R. Granting Part & Den. Part Defs.' Mot. Dismiss 3, ECF No. 18.) At the same time, he denied the motion to dismiss Plaintiff's deliberate indifference claim against Defendants Gore and Joshua in their official

9

capacities.  (See id. at 3-4.)  Still, an official capacity suit is treated as a suit against the municipality.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).

In their Motion, Defendants Gore and Joshua contend that they are entitled to summary judgment because Wilson is unable to establish a municipal civil rights claim against the County of San Diego.  (Mot. Summ. J. Attach. #1 Mem. P. & A. 3, ECF No. 40.)  They explain that Plaintiff's only claim is that due to the Zero Tolerance Protection Policy, he did not receive the drug of his choice.  (Id. at 4.)  "Despite Plaintiff's allegation, there is no evidence that the County withholds medically necessary prescription medication from inmates."  (Id.)  Defendants assert that the Medical Services Division's policy on pain medication and opioids discusses the legitimate penological interest in prohibiting abuse of drugs.  (Id. (citing id. Attach. #2 Ex. C).)  They argue that this legitimate penological interest is reasonable, promotes institutional security, is consistent with contemporary standards for medical services in jails, and promotes inmates' health and welfare.  (Id. at 4-5 (citations omitted).)

Gore and Joshua assert that "[t]here is no triable issue of genuine material fact regarding municipal civil rights liability because [Wilson] cannot prove a County employee acted with deliberate indifference to a serious medical condition pursuant to a formal policy nor can he prove existence of a deliberately indifferent or unlawful policy."  (Id. at 5.)  They explain that Plaintiff does not have evidence showing interference, denial, or delay of treatment resulting from a policy of deliberate indifference.  (Id.)  Gore and Joshua point out that although Wilson asserts that he took medication regularly for his back pain, he did not remember the dosage or frequency of his prescriptions

//

10

during discovery, nor could he produce any medical records to support the existence of prescriptions.  (Id. at 5-6.)

Defendants further indicate that Plaintiff was not taking any medication when he was booked into custody in 2013.  (Id. at 6 (citing id. Attach. #2 Ex. E, at 82).)  Wilson was treated for his back pain while incarcerated in 2013 and was prescribed Neurontin and Ultram.  (Id. (citations omitted).)  On August 12, 2013, however, Plaintiff was found "cheeking" 400mg of Neurontin by keeping this medication under his tongue, prompting medical staff to discontinue his prescription.  (Id. (citations omitted).)  He continued to be given Ultram and was counseled on the dangers of cheeking.  (Id. (citations omitted).)  Gore and Joshua note that following the cheeking incident, Wilson was seen two additional times in August of 2013 and tramadol and naproxen were recommended for his back pain.  (Id. at 7 (citations omitted).)  Plaintiff filed a grievance regarding the discontinuance of Neurontin, and he was released from custody on September 9, 2013. (Id.)

On February 6, 2014, Wilson was again reincarcerated.  (See id. (citing id. Attach. #2 Ex. B, at 53).)  During his medical intake, Plaintiff stated that he was taking Ultram for his sciatic nerve pain.  (Id. at 7-8 (citation omitted).)  He was prescribed Tylenol, Motrin, and Naprosyn.  (Id. at 8 (citing id. Attach. #2 Ex. B, at 53).)  Gore and Joshua note that after Plaintiff requested to be put back on Neurontin in August of 2014, an administrative case review was conducted.  (Id.)  Defendant Joshua subsequently advised Wilson that Naprosyn was the recommended drug for Wilson's back pain.  (Id. (citation omitted).)  Joshua stated that there was no medical indication for Plaintiff to continue using Neurontin in 2014, (id. (citing id. Attach. #4 Decl. Joshua 4)), and Defendants' //

11

retained expert also opined that neither Ultram nor Neurontin were medically necessary, (id. (citing id. Attach. #2 Ex. A)).

Gore and Joshua further argue that Wilson had no serious medical condition. (Id.)

> Plaintiff provided no medical evidence that his orthopedic condition had deteriorated from the time of his release from custody on September 13, 2013, until his re-incarceration in 2014. Indeed, the consensus of medical opinion regarding Plaintiff's treatment regimen being proper, and that he did not require narcotic pain medication treatment rebuts Plaintiff's claim that he even had a serious medical condition.

(Id.) Defendants contend that Wilson has not shown a failure to treat or that his treatment amounted to deliberate indifference or caused him further injury. (Id. at 9.) "And Plaintiff has not identified a deliberately indifferent policy that was the moving force of any violation of his right to medical care." (Id.)

Gore and Joshua urge that Wilson's Monell claim is based on him not receiving the medication of his choice. (Id.) They assert that this does not amount to deliberate indifference. (Id.) "Plaintiff did not possess a constitutional right to have the prescription drug of his choice to manage his pain while he was incarcerated." (Id.) They note that several physicians evaluated Wilson, and all agreed with the regimen of pain management and that Neurontin and Ultram were unnecessary. (Id.)

In the Opposition, Plaintiff asserts that Defendants "submitted knowingly incomplete, inadequate and falsifying medical records of various physicians['] findings and diagnoses to attain a summary [judgment ruling] by the courts." (Opp'n 2, ECF No. 47.) Wilson argues that Gore and Joshua's failure to submit the medical records in their entirety supports denying the Motion for Summary Judgment. (Id.) He further contends that he "has established more than just a genuine dispute of the [Defendants'] allegations based on the direct and appropriate evidence of the medical records being provided with

12

this motion." (<u>Id.</u>)  Wilson asserts that there is enough evidence to deny the Motion for Summary Judgment.   (<u>Id.</u> at 2-3.)  He asks that the medical records attached to his Opposition be accepted and that the Motion for Summary Judgment be stricken or denied.  (<u>Id.</u> at 3.)

Gore and Joshua respond that Plaintiff has not created any genuine issue of material fact.  (Reply 1, ECF No. 50.)  They argue that Wilson's untimely opposition "makes it clear that there is no admissible evidence or legal authority to support a claim for municipal-federal-civil-rights liability against Defendants." (<u>Id.</u>)  Defendants note that in support of his Opposition, Plaintiff lodged five unauthenticated pages of alleged medical records that postdate his incarcerations.  (<u>Id.</u> at 2.)  Gore and Joshua contend that Wilson must present admissible evidence when opposing a motion for summary judgment, and they argue that the Court should disregard the documents submitted by Plaintiff.  (<u>Id.</u> at 3-4 (citations omitted).)  Defendants further state that the 2016 medical records submitted by Wilson fail to raise a genuine issue of material fact because they relate to medical care after Plaintiff's incarcerations.  (<u>Id.</u> at 3.)

Gore and Joshua reassert that they are entitled to judgment as a matter of law because Wilson cannot establish a viable municipal civil rights claim.  (<u>Id.</u>)

> The record before the Court is devoid of any evidence that Defendants denied, delayed or interfered with Plaintiff's receipt of medical care, including medication.  To the contrary, the undisputed evidence confirms that Plaintiff received extensive medical treatment and medications while incarcerated and was evaluated by several physicians who agreed with the pain management regimen that was in place for the conditions and complaints Plaintiff presented with.

(<u>Id.</u>)  They further contend that a medical expert confirmed that Wilson was given appropriate medical care, and they moreover argue that Plaintiff has failed to show a

policy of deliberate indifference resulting in the alleged violations of his constitutional rights. (Id. at 4.) "These undisputed facts confirm that there is no basis to assert a Monell claim for deliberate indifference to medical care." (Id.)

**A.** **Timeliness of Briefs**

At the outset, per the Court's briefing schedule, Wilson's Opposition to the Motion for Summary Judgment was due on January 9, 2017, and Defendants' Reply was due on January 16, 2017. (See Klingele/Rand Notice Warning Pro Se Prisoner Mot. Summ. J. 2, ECF No. 41.) Plaintiff's Opposition, however, was filed nunc pro tunc to the date received, January 23, 2017 [ECF No. 47]. Gore and Joshua's Reply to the Opposition was then filed on February 13, 2017 [ECF No. 50]. As a result, both filings are untimely. Nevertheless, the substance of the Opposition and the Reply do not alter the outcome of this Report and Recommendation. Accordingly, even though these filings are untimely, they are still considered.

**B.** **Evidence the Court May Consider on Summary Judgment**

As a preliminary matter, although the Complaint was signed under penalty of perjury, (see Compl. 7, ECF No. 1), the Opposition was not, (see Opp'n 3, ECF No. 47). Normally, documents not signed under penalty of perjury cannot be considered on summary judgment. See Jones v. Blanas, 393 F.3d at 923 (examining verified pleadings and motions in opposition to summary judgment). But "the Ninth Circuit appears to require district courts to consider some unsworn, inadmissible material in the summary judgment analysis." Rosenfeld v. Mastin, NO. CV 11-7002-DOC(E), 2013 U.S. Dist. LEXIS 151869, at *11 (C.D. Cal. Sept. 11, 2013) (citing Fraser v. Goodale, 342 F.3d 1032 (9th Cir. 2003)).

Thus, the rule of Fraser v. Goodale appears to be that where the party opposing summary judgment manifestly has personal knowledge of the

unsworn, inadmissible material submitted, such that the party could present
the content of the material in admissible form at trial, the court should
consider the material in the summary judgment analysis.

Id. at *12. Yet, even taking Wilson's Opposition into account, for the reasons explained below, Plaintiff fails to show that an issue of material fact exists. See Collins v. Chesapeake Commons Holdings, LLC, No. CIV S-09-1816 FCD EFB PS, 2011 U.S. Dist. LEXIS 69428, at *2-3 n.2 (E.D. Cal. June 28, 2011) (granting summary judgment for moving party, even after considering documents not signed under penalty of perjury by the opposing party).

## C. **Defendants' Motion for Summary Judgment**

### 1. **Wilson's claim for deliberate indifference**

To prevail on his deliberate indifference claim, Plaintiff must show (1) the existence of a serious medical need and (2) that Gore and Joshua were deliberately indifferent to. See Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1059-60). Regarding the first requirement, Defendants contend that Wilson did not have a serious medical condition. (Mot. Summ. J. Attach. #1 Mem. P. & A. 8, ECF No. 40.) Gore and Joshua assert that Plaintiff has not provided any medical evidence showing that his condition deteriorated between his release and his reincarceration. (Id.) But deterioration of Wilson's condition during this time period is not necessary to show a serious medical need. Rather, "serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F.3d at 1131 (alteration in original) (quoting McGuckin, 974 F.2d at 1059-60). Here, Plaintiff contends in his sworn Complaint that he was diagnosed with "chronic sciatica, herniated

15

ruptured and dessicated [sic] discs (L1-L5)-(T1-T2)." (Compl. 3, ECF No. 1.) He further asserts that he has "severe, chronic lower back pain." (Id. at 16.) None of the exhibits submitted by Defendants with their Motion for Summary Judgment refute the existence of Wilson's chronic back pain from sciatica and degenerative discs. (See Mot. Summ. J. Attach. #2 Exs. A-F, at 3-85, ECF No. 40.)

To the contrary, even Dr. Jeffrey Schiffman, Gore and Joshua's retained expert witness, admitted several times in his independent medical review that Plaintiff has chronic low back pain. (See, e.g., id. Ex. A, at 25-26.) Dr. Schiffman additionally admitted that Wilson has a history of degenerative discs and sciatica. (See id. at 5.) The evidence before the Court regarding Plaintiff's chronic back pain supports the existence of a serious medical need. See Villa v. Sullivan, No. C 13–3311 SI (pr), 2014 WL 3751944, at *5 (N.D. Cal. July 29, 2014) ("The evidence in the record showing that Villa had spinal arthritis and chronic back pain suffices to permit a jury to find the existence of objectively serious medical needs." (citing Lolli v. Cty. of Orange, 351 F.3d 410, 419 (9th Cir. 2003))); see also Rowe v. Ahmed, No. C 08–2317 SI (pr), 2009 WL 1816962, at *7 (N.D. Cal. June 23, 2009) (finding on summary judgment that "evidence of . . . severe and chronic back pain is enough to show an objectively serious medical need[]"). As a result, Defendants have not met their burden of showing that they are "entitled to judgment as a matter of law" regarding the first requirement of deliberate indifference. See Fed. R. Civ. P. 56(a).[2]

_____

[2] Gore and Joshua additionally contend that "the consensus of medical opinion regarding Plaintiff's treatment regimen being proper, and that he did not require narcotic pain medication treatment rebuts Plaintiff's claim that he even had a serious medical condition." (Mot. Summ. J. Attach. #1 Mem. P. & A. 8, ECF No. 40.) This argument

Addressing the second requirement for deliberate indifference, however, Gore and Joshua have shown "the absence of a genuine issue of material fact" with regard to Wilson's deliberate indifference claim. See Celotex Corp., 477 U.S. at 323. An inmate does not have a constitutional right to choose his own medication. See Gieck v. Levin, No. 05–CV–01974–H(RBB), 2010 WL 235084, at *9-10 (S.D. Cal. Jan. 21, 2010) (granting summary judgment because doctors treated plaintiff with pain medications and their failure to upgrade inmate's pain pills only amounted to a difference of opinion). If medical personnel disagree on the course of patient treatment, subsequent health care providers are not deliberately indifferent when they choose one treatment over the inmate's wishes. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (holding that prison doctors did not act with deliberate indifference in pursuing nonsurgical treatment even though one earlier prison doctor recommended surgery). Medical treatment inconsistent with an inmate's preference does not equal a constitutional violation. See Franklin v. Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981) (holding prison clinic did not act with deliberate indifference when it took twelve X-rays of the inmate when two would have been sufficient although the plaintiff argued that this was an "'undue invation (sic) of personal Bones'") (alteration in original); see also Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (noting that a mere delay of surgery, without allegations of resulting harm, is insufficient to state a claim of deliberate medical indifference).

conflates the two requirements of deliberate indifference. See Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1059-60).

Here, the crux of Plaintiff's Complaint is that he was denied prescriptions for Neurontin and Ultram. (See Compl. 3, ECF No. 1.) Yet, in his independent medical review, Dr. Schiffman stated that Neurontin was not medically necessary for Wilson's condition. (Mot. Summ. J. Attach. #2 Ex. A, at 13, ECF No. 40.) He further indicated that "the use of Neurontin and Ultram is not supported in the peer review literature for chronic low back pain . . . ." (Id. at 26.) The doctor additionally opined that neither Vicodin, Flexeril, aquatic therapy, nor a TENS unit were medically necessary. (Id. at 17-25.) Dr. Schiffman concluded that Plaintiff's medical treatment with nonsteroidal anti-inflammatory drugs was medically appropriate. (Id.) Additionally, Defendant Dr. Joshua stated under penalty of perjury that Wilson's treatment was within the standard of care for his condition. (Id. Attach. #4 Decl. Joshua 4.)

Plaintiff was treated several times for low back pain in 2013 and 2014. (See id. Attach. #2 Ex. A, at 10-11.) In August of 2013, all chronic pain medications were stopped because Wilson was caught cheeking Neurontin. (Id.) Although Wilson stated that he is allergic to Tylenol, Ibuprofen, and Naproxen, in Dr. Schiffman's opinion, he has "only seen this combination of allergies in drug seekers, and allergies to either Tylenol, Ibuprofen or Naproxen alone are very, very rare." (Id. at 11.) Further, when Plaintiff complained that he was allergic to Motrin, this medication was discontinued. (See Compl. 25, ECF No. 1.) Wilson was given several different medications for his chronic back pain. (See Mot. Summ. J. Attach. #2 Ex. A, at 10-11, ECF No. 40.) While he may have wanted different treatment than what he received, this does not rise to the level of a constitutional violation. See Franklin, 662 F.2d at 1344; see also Rojo v. Paramo, Civil No. 13cv2237 LAB (BGS), 2014 WL 2586904, at *4 (S.D. Cal. June 10, 2014) (citations omitted) ("[A] difference of opinion between Plaintiff and his doctor as

to which medications are appropriate for his conditions, is not sufficient to support [a] claim of deliberate indifference."). Defendants have met their burden of showing the absence of a genuine issue of material fact with regard to Plaintiff's claim that they were deliberately indifferent to his serious medical need. See Tilford v. Chau, No. 12CV2507–GPC MDD, 2014 WL 2965320, at *14 (S.D. Cal. July 1, 2014) ("[T]he evidence shows that Defendants actively and continuously treated Plaintiff, taking considerable efforts to ensure that Plaintiff's pain was being managed . . . . Plaintiff's preference for other medication and his subjective complaints of pain are insufficient to overcome this evidence and do not preclude summary judgment." (citing Toguchi, 391 F.3d at 1058)).

The burden now shifts to Wilson to establish, beyond the pleadings, that there is a genuine issue for trial. See Celotex Corp., 477 U.S. at 324. He has failed to do so. Even if the Court were to consider the medical records attached to Plaintiff's untimely and unsworn Opposition, these records are from Wilson's visits to the Veterans Administration hospital in 2016. (See Opp'n 5-9, ECF No. 47.) They have no material bearing on whether Gore and Joshua were deliberately indifferent to Wilson's serious medical needs in 2013 and 2014. Plaintiff contends that the medical records submitted by Defendants are "incomplete, inadequate and falsifying." (Id. at 2.) But he does not support this assertion with any evidence. Although the Court must view the evidence in the light most favorable to Wilson, see Fontana, 262 F.3d at 876, Plaintiff's version of the facts "is blatantly contradicted by the record," especially with regard to his purported allergies to three different nonsteroidal anti-inflammatories, see Scott, 550 U.S. at 380. His various assertions are insufficient to establish a genuine issue of fact.

Accordingly, the Motion for Summary Judgment should be **GRANTED** as to Wilson's deliberate indifference claim under the Eighth Amendment. For the same reasons, Plaintiff's Motion to Strike and Deny Defendants' Motion for Summary Judgment should be **DENIED**.

###    2.    Plaintiff's official-capacity claim against the Defendants

"[I]n an official-capacity suit[,] the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky, 473 U.S. at 166 (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978)). A municipality may be liable under § 1983 if the plaintiff alleges facts establishing that the municipality or a final decisionmaker for the municipality adopted or promulgated "a policy statement, ordinance, regulation, or decision" resulting in a constitutional deprivation. Monell, 436 U.S. at 690; Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403-04 (1997); Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995). In order to prove a Monell claim, Wilson must show the following: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Oviatt By & Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989)).

Here, there is no dispute regarding the existence of a policy. Gore and Joshua admit that the Medical Services Division has a policy regarding pain medication and opioids. (Mot. Summ. J. Attach. #1 Mem. P. & A. 4, ECF No. 40 (citing id. Attach. #2 Ex. C).) Nevertheless, Plaintiff's claim against them necessarily fails because his constitutional rights were not violated, and consequently, Defendants are entitled to

summary judgment on his deliberate indifference claim. Wilson cannot show the first, third, or fourth elements necessary to sustain his cause of action under <u>Monell</u>. <u>See Oviatt By & Through Waugh</u>, 954 F.2d at 1474. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's official-capacity claim against them premised on <u>Monell</u> should be **GRANTED**. <u>See</u> <u>Elvira v. City of Escondido</u>, Case No. 14-cv-00081-BAS(NLS), 2016 WL 5719825, at *14 (S.D. Cal. Sept. 30, 2016) ("[S]ummary judgment on Plaintiffs' <u>Monell</u> claim against the City is appropriate for two reasons. First, because the Court has concluded Plaintiffs' and Mr. Campos's constitutional rights were not violated, Plaintiffs cannot demonstrate a deprivation of a constitutional right to serve as the foundation for their <u>Monell</u> claim." (citing <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011))); <u>see also</u> <u>Marsh v. Cty. of San Diego</u>, 771 F. Supp. 2d 1227, 1233 (S.D. Cal. 2011) (internal citation omitted) ("Plaintiff's claim against the County is also predicated on Coulter's copying of the autopsy photos. And as discussed above, these acts cannot establish a § 1983 claim. Thus, even assuming all the allegations were true, Plaintiff's <u>Monell</u> claim fails. Summary judgment on this claim is appropriate . . . ."), <u>aff'd</u>, 680 F.3d 1148 (9th Cir. 2012).

### 3. **Wilson's due process claim against Joshua**

Gore and Joshua's Notice of Motion states that "there is no genuine dispute as to any material fact on any claim asserted by plaintiff, and defendants are entitled to judgment as a matter of law." (Mot. Summ. J. 1, ECF No. 40.) In his Complaint, Wilson asserts that Defendant Joshua violated his due process rights by implementing the Zero Tolerance Protection Policy. (Compl. 2, ECF No. 1.) Defendants' Motion for Summary Judgment does not address Plaintiff's due process claim. (<u>See</u> Mot. Summ. J. Attach. #1 Mem. P. & A. 1-10, ECF No. 40.) Because the Defendants have not discussed the

deliberate indifference claim in their briefs, the Motion for Summary Judgment should be **DENIED** as to Wilson's due process claim.  See <u>Celotex</u>, 477 U.S. at 326.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons discussed, Gore and Joshua's Motion for Summary Judgment [ECF No. 40] should be **GRANTED in part and DENIED in part**.  Plaintiff's Motion to Strike and Deny Defendants' Motion for Summary Judgment [ECF No. 47], should be **DENIED**.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before May 15, 2017.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before May 29, 2017.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  April 13, 2017

Hon. Ruben B. Brooks
United States Magistrate Judge

cc:    Judge Houston
       All Parties of Record